IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | | |
| v. | | No.    3:19-cr-112-K |
| HARLEY E. BARNES, III,<br>Defendant. | | |

## RESPONSE IN OPPOSITION TO DEFENDANT'S
## EMERGENCY MOTION FOR TEMPORARY RELEASE

Defendant Harley E. Barnes, III, asks this Court to release him into the community because of the global coronavirus pandemic.  The defendant, however, is not a member of a high-risk class of individuals uniquely vulnerable to COVID-19 and he offers no evidence to suggest otherwise.  He fails to propose a meaningful plan of release that would better mitigate the risks of contracting COVID-19 than continued detention.  He does not even identify a suitable custodian to whom he can be released as the law requires—a failure that is particularly fatal here because his last residence was with his girlfriend, who is now his co-defendant in a new criminal case, at a home they bought with a fraudulently obtained loan.

Moreover, the defendant fails to overcome the overwhelming evidence that he poses a danger to the community that cannot be contained by any conditions of release.  This Court previously revoked his bond because he violated his conditions of release and he was recently charged with additional fraud and obstruction offenses he committed while on bond.  In addition, the defendant now suggests he has COVID-19 symptoms.  The Court

should not release a symptomatic, serial fraudster who has demonstrated a complete disregard for this Court's orders.  The Court should deny the defendant's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 6, 2019, Barnes was arrested after being indicted for his role, as Chief Financial Officer of EarthWater, Ltd. ("EarthWater"), in a high-yield investment fraud scheme that targeted elderly victims.  The government initially agreed to the defendant's release subject to conditions barring him from contacting, directly or indirectly, anyone who may be a victim or witness in the case and prohibiting him from selling, promoting, or advising on the purchase or sale of securities.  (ECF Nos. 6, 9.)  The Court released Barnes subject to those conditions and others the same day of his arrest.  (*Id.*)

On September 16, 2019, the government moved to revoke the defendant's conditions of release.  (ECF No. 92.)  On September 20, 2019, the Court held a hearing on the motion. (ECF Nos. 97, 104.)  The evidence submitted by the government with its motion and at the hearing demonstrated that, upon his release on May 6, 2019, the defendant immediately, with the help of his girlfriend and EarthWater's former Vice President, Beth Ellen DeGroot, devised a plan to continue promoting and selling securities to the same victims he was alleged to have defrauded through the sale of EarthWater securities.  (*See* ECF No 92 at 3-10; ECF No. 104 at 11-36.)  To conceal his efforts, the day after he was released, the defendant obtained a new cell phone number to use, which DeGroot set up in her name. (ECF No. 104 at 11-12 and Ex. 2.)  Two days after that, he created a new email address.  (ECF No. 104 at 12-13 and Ex. 3.)  The defendant then proceeded to execute his and DeGroot's plan using his new phone number and email

address and by having DeGroot communicate with victims and witnesses on his behalf. (ECF No. 104 at 21-36 and Exs. 6, 9-13.)  On at least one occasion, Barnes instructed a victim to whom he reached out not to use old lines of communication, which were known to law enforcement.  (ECF No. 104 at 21 and Ex. 6.)

At the conclusion of the hearing, the Court revoked Barnes's pre-trial release.  (ECF No. 98; ECF No. 104 at 80-81.)  The Court found that there was clear and convincing evidence showing Barnes had violated his conditions of release barring him from contact with victims and witnesses and prohibiting him from selling, promoting, or advising on the purchase or sale of securities.  (ECF No. 98 at 1.)  Specifically, the Court found that, in addition to contacting victims and witnesses, the defendant, with DeGroot, was attempting to promote and sell securities, "to convert EarthWater securities to another corporation for which [Barnes] could sell securities."  (ECF No. 104 at 80.)  With respect to the latter conduct, the Court explained, "I think that's very clear from the evidence here."  (*Id*.)

The Court further found that, in light of the defendant's conduct, there were no conditions or combination of conditions that could adequately ensure the safety of the community.  (*Id*.)  The Court noted that the safety of the community "is my big concern based on my findings in this case," and that "I believe that I've already entered an order that did as much as this Court could do to ensure . . . the safety of the community from additional criminal activity."  (*Id*. at 80-81.)  The Court further concluded that it was unlikely the defendant would abide by any conditions that may be imposed "based on the fact that immediately, almost, or within a few days of me imposing these conditions, there was the beginnings of them being violated."  (*Id*. at 81.)

3

While he was released, however, the defendant did more than just violate the Court's no-contact orders and bar on promoting or selling securities. On March 4, 2020, a grand jury found probable cause that the defendant, conspiring with DeGroot, also committed additional crimes. *See United States v. DeGroot et al*, 3:19-cr-521-K, ECF No. 28. Specifically, the grand jury charged Barnes with conspiring with DeGroot to (1) defraud EarthWater's payroll processor of tens of thousands of dollars and (2) fraudulently obtain a mortgage from First National Bank of Omaha for a house in Plano, Texas. *Id*. ¶¶ 65-68. The grand jury further charged Barnes and DeGroot with attempting to obstruct this proceeding by hiding Barnes's assets with the intention of preventing their forfeiture should he ultimately be convicted in the original case. *Id*. ¶ 69-70. The second indictment alleges the defendant began his additional crime spree just a few days after he was released in this case and used the same means of concealment he used to violate the other conditions this Court placed on him—the new phone number set up in DeGroot's name and a new email address. *Id*. ¶¶ 9-12, 23-41. Further, at the same time that they were claiming to EarthWater victims that they desperately needed money and a plan to continue selling EarthWater securities to keep the company going, the second indictment alleges that, in order to get their hands on even more money, the defendant and DeGroot were making false claims to EarthWater's payroll processor and First National Bank of Omaha that EarthWater was still operating normally and they both were employed with continuing pay. *Id*. ¶¶ 23-54. The defendant is awaiting his initial appearance in the second case.

## ARGUMENT AND ANALYSIS

The defendant seeks release under 18 U.S.C. § 3142(i).  Section 3142(i) allows that a judicial order of detention may "permit the temporary release" of a defendant "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."  Temporary release under Section 3142(i) is available in "rare circumstances," *United States v. Villegas*, Crim No. 2:19-cr-568-AB, 2020 WL 1649520, at *1 (C.D. Cal. Apr. 3, 2020); *see also United States v. Hamilton*, Crim. No. 19-cr-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (noting that courts use temporary release under Section 3142(i) "sparingly"), and the defendant bears the burden to show that it is warranted, *United States v. Dupree*, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011); *United States v. Boatwright*, Crim. No. 2:19-cr-301-GMN-DJA, 2020 WL 1639855, at *4 (Apr. 2, 2020 D. Nev.) (collecting cases).  The defendant's proffered reasons for needing release must be considered in light of and weighed against the reasons for his detention.  *See United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *1 (D. Kan. Mar. 25, 2020) (holding that, "[o]n balance, [the defendant had] not shown a sufficiently compelling reason that his release is necessary, particularly in light of the court's prior finding that he is a flight risk and a risk of harm to others"); *United States v. Cox*, Crim. No. 219-cr-271, 2020 WL 1491180, -- F. Supp. 3d --, at *2 (D. Nev. Mar. 27, 2020) ("[I]n considering the propriety of temporary release, the court would need to balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention.").  Moreover, where, as here, a defendant seeks release to home confinement, the Court must identify an

"appropriate person," to whom the defendant can be released.  *See, e.g.*, *United States v. Lee*, Crim. No. 19-cr-298, 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020) ("[T]o be successful, any subsequent motion for release . . . under this provision must address how [the defendant's] mother, or any other individual, would be an "appropriate person" within the meaning of section 3142(i).") (citing cases).

The defendant offers two grounds for release under Section 3142(i).  First, he claims the general fact of the COVID-19 pandemic provides a "compelling reason" for his release because there are confirmed cases in the Dallas County Jail, where he is held, he is over 60 years old, suffered a stroke last summer, and is exhibiting symptoms of aches and shortness of breath.  (ECF No. 262 at 13-17.)  Second, he claims release is necessary for the preparation of his defense because visiting with his counsel in detention poses too high a risk to his counsel and others at the facility.  (*Id*. at 18-19.)  The defendant has failed to meet his burden to show either reason provides a basis for release.  Moreover, he has failed to identify an "appropriate person" to whom he can safely be released, as Section 3142(i) requires—he does not even try.  His motion should be denied.

## I.    The Defendant Remains a Danger to the Community.

The defendant was held pursuant to Section 3142(e) after this Court determined that (i) he posed a danger to the community; (ii) there were no conditions or combination of conditions that could reasonably assure the safety of the community were he to be released; and (iii) even if there were such conditions, he was unlikely to abide by them.  (ECF No. 98 at 2.)  The danger this Court found the defendant to pose has become more clear since his bond was first revoked:  he has now been indicted for additional crimes he committed

while on release in this case.  Indeed, if a revocation hearing were held today, a rebuttable presumption would apply that no conditions or combination of conditions could reasonably assure the community's safety because there is now probable cause to believe he committed multiple federal crimes while on release.  *See* 18 U.S.C. § 3148(b).

Now the defendant poses an additional, new type of danger to the community as well—he may have COVID-19.  He asserts that he "is currently experiencing body aches and shortness of breath," (ECF No. 262 at 16; *see also id*. at 2.)  Although his claims are uncorroborated by any medical records,[1] if true, these symptoms are consistent with COVID-19.[2]  Indeed, these symptoms apparently prompted the defendant's counsel to request that Dallas County Jail test the defendant for COVID-19.  (*Id*. at 2.)

Releasing the defendant when he is symptomatic would place members of the community directly in harm's way.  The defendant appears to specifically contemplate meeting with his counsel in person, as he asserts that he must be released to prepare his defense because his counsel refuses to meet with him at the jail.  (*See id*. at 18-19.)  In addition, releasing a defendant with a highly contagious virus to the custody of a third party

---

[1] The defendant's prior conduct has left the government with significant concerns about his credibility when he makes claims about his health.  Previously, his counsel expressed concerns to the government about his cognitive functions and mental health based on how the defendant presented himself when communicating with counsel.  The government, however, has obtained recorded jail calls between (i) the defendant and DeGroot, and (ii) the defendant and his family members, since his September 2019 detention.  In these calls, he converses easily and with no apparent challenges about the pending charges against him, his incarceration, and his finances, among other things.

[2]     *See*     https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html.

for home confinement would undoubtedly exacerbate the risk of spread, both to the custodian, the custodian's family, and the general community.  Unlike the defendant, the third-party custodian and his or her family would not be subject to home confinement and thus could transmit the virus outside of their home to the surrounding community if they contract it from the defendant.  Moreover, other individuals may come and go from the home where the defendant is confined.  If they contract the virus from the defendant, they too would then carry it out into the surrounding community.

The defendant offers no new facts that undermine this Court's prior findings of the danger he poses or the added weight of the new criminal allegations against him and the symptoms he now claims he is exhibiting.  Instead, he claims that he is more likely to abide by conditions of release now because of the fear of returning to detention amid the COVID-19 virus's spread.  (ECF No. 262 at 20.)   But he has proven that his representations to this Court cannot be trusted.  On May 6, 2019, he promised this Court he would abide by the conditions it placed on him and not commit new crimes.  He then walked out the courthouse doors and the very next day set up a phone number in someone else's name so he could consistently and willfully violate this Court's orders to satisfy his own greed.

Moreover, the defendant's offer to submit to home detention with GPS monitoring and not use the Internet provides no assurance.  The defendant's continuing criminal activity is of the type that does not require the defendant to leave his home—or even his couch.  As the allegations in the new indictment against the defendant demonstrate, he carried out his fraud while on release in this case entirely by telephone and email.  Superseding Indictment, Crim. No 3:19-cr-521-K, ECF No. 28, ¶¶ 23-54.  And he has

shown the ease with which he can and will use means of communication under other people's names to evade detection.  Further, there is no level of monitoring of which the government is aware that would enable this Court to ensure the defendant does not simply create yet another new email address and use other people's computers or smartphones to access the Internet to carry out a new scheme.  As one court has noted, "[w]hile the location monitoring that he proposes may offer useful information about where he is, it provides little useful information about what he is doing." *United States v Martin*, Crim. No. PWG-9-140-13, 2020 WL 1274857, at *4 (D. Md. Mar. 17, 2020).  "Moreover, location monitoring is not a limitless resource, nor is its installation and monitoring by United States Pretrial Services officers without risk to those personnel (who must be trained and certified to install location monitoring) given the current recommendations regarding implementation of social distancing." *Id.*

In addition, the incentives that led the defendant to violate the conditions of his release and commit new crimes while on bond have not changed.  He and DeGroot sought more money from EarthWater's victims and defrauded EarthWater's payroll processor when they could no longer pilfer EarthWater's bank accounts because those funds had been seized pursuant to a warrant.  Those accounts are still under seizure and, as far as the government is aware, neither the defendant nor DeGroot has a legitimate source of income.

Finally, this Court's conclusion that the defendant is unlikely to abide by any conditions of release takes on a greater meaning now that he claims he has COVID-19 symptoms.  When he violates the Court's orders again, it will endanger those who will have to respond.  *See, e.g., Clark*, 2020 WL 1446895, at *7 ("A defendant who is unable to

9

comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody.").

The defendant has demonstrated time and again that he poses a danger to the community that cannot be deterred by any conditions of release, and the magnitude of the danger he poses to the community has only increased since the defendant was last before this Court.  As the Bail Reform Act recognizes, he should remain detained pending trial. 18 U.S.C. § 3142(e)(1).

## II.     The Defendant Has Not Met His Burden to Demonstrate that His Individual Circumstances Present a "Compelling Reason" For Temporary Release.

The Bail Reform Act requires courts to make an individualized assessment when deciding whether a particular defendant should be released or detained.  *See, e.g.*, *Cox*, 2020 WL 1491180 at *2 ("[W]hether temporary release under § 3142(i) is proper requires the individualized analysis of the facts of each case.").  Where defendants claim COVID-19 constitutes a "compelling reason" for temporary release under 18 U.S.C. 3142(i), courts make an individualized determination based on the consideration of several factors, including:

> (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

*Clark*, 2020 WL 1446895 at *3; *see also, e.g.*, *United States v. Veras*, Crim. No. 3:19-cr-10, 2020 WL 1675975, at *5-6 (M.D. Pa. Apr. 6, 2020) (using the *Clark* factors); *United States v. Lunnie*, Crim. No. 19-cr-180, 2020 WL 1644495, at *1-2 (E.D. Ark. Apr. 2, 2020) (same).  Courts also have considered the steps detention facilities are taking to prevent and control the spread of the virus.  *Id.*

Courts have been clear that a generalized fear of or speculation about contracting COVID-19 is not a sufficiently compelling reason for release.[3]  *See, e.g.*, *Villegas*, 2020 WL 1649520, at *2 ("No matter the heightened risks intrinsic to prison populations as a matter of public health, the Court has no authority as a matter of law to permit pretrial release under the Bail Reform Act just because of the current pandemic's generic risks."); *United States v. McDonald*, Crim. No. 2:19-cr-312-KJD-VCF, 2020 WL 1659937, at *4 (D. Nev. Apr. 3, 2020) ("A defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation."); *United States v. Mendoza*, No. 20-mj-00011, 2020 WL 1663361, at *2 (M.D. Pa. Apr. 3, 2020) ("[A]

---

[3] The defendant suggests that at least one court, in the Southern District of New York, has found the general health risks of COVID-19 alone to constitute a sufficiently "compelling reason" under Section 3142(i).  (*See* ECF No. 262 at 17 (citing *United States v. Stephens*, No. 15-cr-95-AJN, 2020 WL 1295155, at *3 (S.D.N.Y. Mar. 19, 2020)).)  Barnes's co-defendant, Cengiz Jan Comu, made a similarly misleading claim when he sought release over two weeks ago.  (*See* ECF No. 253 at 12.)  As the government pointed out in its response to Comu, (ECF No. 256 at 10), the court in *United States v. Stephens* expressly did *not* make any finding as to whether the existence of the COVID-19 pandemic alone was sufficient.  *See Stephens*, 2020 WL 1295155 at *3 n. 3 ("The Defendant also argues that the current public health crisis itself provides an additional compelling reason necessitating his release for all the reasons already articulated above.  The Court need not decide this additional factor here because its determination that release is necessary for the preparation of the Defendant's defense is sufficient under § 3142(i)." (internal citations omitted)).

11

defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation."); *United States v. Marte*, Crim. No. 19-cr-795, 2020 WL 1505565, at *1 (S.D.N.Y. Mar. 30, 2020) ("[I]n the absence of any evidence that defendant has a special condition making him substantially vulnerable to Covid-19, the pandemic alone, which is affecting the community in its entirety, is not a compelling reason warranting release."); *Clark*, 2020 WL 1446895, at *4 (requiring individualized determination whether COVID-19 presents compelling reason for release based on original grounds for detention, specificity of professed concerns, and particularized finding whether release could exacerbate risks to defendant or public).

Instead, it is only where courts have found pre-trial detainees to have unique, particularized health risks that cannot be sufficiently addressed while in detention, that they have found temporary release appropriate. *See, e.g.*, *United States v. Perez*, Crim. No. 19-cr-297, 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) ("The Court's decision in this case is based on the unique confluence of serious health issues and other risk factors facing this defendant, including but not limited to the defendant's serious progressive lung disease and other significant health issues, which place him at a substantially heightened risk of dangerous complications should be contract COVID-19 as compared to most other individuals."); *United States v. Michaels*, Crim. No. 19-cr-76, ECF Nos. 1056, 1061, 1062 (C.D. Cal.) (temporarily releasing 78-year-old defendant who proffered evidence from a physician showing the defendant had numerous respiratory disorders making him more vulnerable to severe illness if he contracted COVID-19).  The defendant fails to identify

such a specific health risk here; and, considering all the factors described above, he fails to meet his burden to establish that a "compelling reason" justifies his release.

First, as described above, the original reasons for the defendant's detention and his subsequent indictment for additional crimes he committed while on bond weigh heavily against his temporary release. His violations and new crimes were not technical, accidental or minor. They were brazen, willful and egregious. And they are the type of violations and crimes that cannot be deterred by home confinement and monitoring of the defendant's Internet usage. As this Court previously concluded, only detention can protect the community.

Second, the defendant's proffered concerns related to COVID-19 fail to establish anything more than the same generalized and speculative concern of infection that every individual in pre-trial detention faces, which does not weigh in favor of release. The defendant claims he is at particular risk because he is "among the group of people that the Center [sic] for Disease Control and Prevention ("CDC") has categorized as the most at-risk for contracting COVID-19," (ECF No. 262 at 1-2), and is in a facility with known cases of the virus, (*id*. at 1). However, the defendant is not in an identified vulnerable group. He is not 65 years or older, and he does not claim to have any of the underlying health conditions the CDC has found to place individuals at higher risk of severe illness, such as lung disease, heart disease, diabetes, or conditions causing a person to be immunocompromised, like HIV or AIDS.[4] The defendant points to the stroke he suffered

---

[4] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Apr. 5, 2020).

almost a year ago, (ECF No. 262 at 17), but the CDC has not identified a past stroke as a condition creating heightened risk to those contracting COVID-19.   Moreover, the defendant offers no information or medical evidence that he currently suffers from a complication as a result of the stroke that increases his risk of severe illness were he to contract COVID-19.  *Cf. Lunnie*, 2020 WL 1644495, at *3 (finding a defendant failed to establish a particular concern that his health put him at increased risk if he contracted COVID-19 where he had a history of "bouts" of bronchitis but did not claim to be currently suffering from such a bout that would make him more susceptible to illness).

Even if the Court were to consider the defendant's claims of current weakness, aches, and shortness of breath to be symptoms of some illness other than COVID-19, the defendant's unsupported and uncorroborated claims of an unidentified illness cannot support a finding that he has established a particularized health risk.  Were the Court to allow release on the defendant's unconfirmed claims, it would be inundated with motions from every federal detainee in Dallas County Jail (and every other facility in the district with known cases of COVID-19), with unsubstantiated and false complaints of illness purportedly requiring emergency release.

Absent evidence that the defendant faces a uniquely serious medical risk from COVID-19, the mere existence of confirmed cases in Dallas County Jail supports only a generalized concern that is applicable to every detainee in the facility.  *See United States v. Munguia*, No. 3:19-CR-191-B (03), 2020 WL 1471741, at *4 (N.D. Tex. Mar. 26, 2020) ("Defendant's argument, however, applies equally to anyone in custody or, for that matter, at the halfway house or anywhere else in this community or any other. Defendant's

argument applies equally to every detainee in detention; however, the Court cannot release every detainee at risk of contracting COVID-19 because the Court would then be obligated to release every detainee.") (quoting *United States v. Fitzgerald*, Crim. No. 2:17-cr-295-JCM-NJK, 2020 WL 1433932, at *2 (D. Nev. Mar. 24, 2020)).  Accordingly, this fact does not support release.  *See, e.g.*, *United States v. Moran*, Crim. No. SAG-19-585, 2020 WL 1663366, at *2 (D. Md. Apr. 3, 2020) (considering a motion for release from a facility with several confirmed cases of COVID-19 and finding Section 3142(i) does not allow release during a pandemic); *Mendoza*, 2020 WL 1663361, at *3 (finding that, even where a guard in the defendant's detention facility tested positive, it remained speculative that the defendant's continued incarceration would increase the risk of harm where there was no evidence the defendant had been exposed).

Third, the defendant fails to offer a meaningful proposed release plan let alone explain how it would better mitigate the COVID-19 risks to the defendant and others than his continued detention.  He claims generally that his release will promote social distancing and allow Dallas County Jail to "be one step closer to having sufficient resources to be able to deal with an almost certainly imminent COVID-19 outbreak."  (ECF No. 262 at 16.) The defendant offers no evidence, however, to support his claims.  He offers no information about whether there is a third-party who would be willing to serve as a custodian, let alone provide the types of information necessary for this Court to consider whether that person's employment, activities, or health would create heightened risks to the defendant or others. He offers no information about the home to which the defendant wishes to be released or the other individuals who live in it so that this Court can consider whether isolation and

15

distancing are even possible there.  He offers no information about what other individuals may be coming and going so that this Court can consider what additional exposure the defendant and those he might come in contact with will face.

Dallas County Jail, on the other hand, is: (i) following the government guidelines for correctional and detention facilities; (ii) isolating inmates who test positive for COVID-19; (iii) segregating inmates who show symptoms of COVID-19; (iv) implementing procedures to limit contact between inmates and the community, including limiting in-person visits and screening for symptoms or illness during intake; and (v) currently reports having sufficient personal protective equipment for its detention staff, including masks and gloves.[5]

Moreover, if the defendant has COVID-19, Dallas County Jail is directly adjacent to Parkland Hospital, which has assured the public that "[e]xtensive planning has been done to address staffing and resources, as well as operational processes" and announced that it "stands prepared to receive patients with COVID-19."[6]  Even if the defendant were to become infected with COVID-19, the need for care is purely speculative since most people who contract COVID-19 do not require hospitalization.[7]  However, should he become

---

[5]    *See*    https://www.dallascounty.org/departments/sheriff/wp-content/uploads/2020/03/DCSO-COVID-19-GUIDELINE.pdf (last visited Apr. 7, 2020); https://www.fox4news.com/news/confirmed-covid-19-cases-at-dallas-county-jail-now-up-to-28   (last   visited   Apr.   6,   2020); https://www.dallasnews.com/news/publichealth/2020/03/12/facing-coronavirus-concerns-collin-county-sheriff-asks-police-not-to-bringpetty-criminals-to-jail/ (last visited Apr. 6, 2020).

[6]    *See*   https://www.parklandhospital.com/information-about-coronavirus-disease-2019-covid19 (last visited Apr. 6, 2020).

[7]    *See*   https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/testing.html

infected and require hospitalization, he fails to offer any reason why Parkland cannot provide sufficient medical treatment.  He also fails to provide any reason why release would provide him with better opportunities for care than that provided by Parkland.

With the significant steps Dallas County Jail has taken, and continues to take, to mitigate the spread of COVID-19, the defendant fails to demonstrate that release provides a better opportunity to mitigate the risk to him and others—especially if he already has COVID-19, as he claims he may have.  The defendant thus offers nothing to shift the balance toward home confinement on these factors.  *See, e.g.*, *Lunnie*, 2020 WL 1644495, at *4 (denying motion for temporary release because, among other things, the defendant "offers nothing more than speculation that home detention would be less risky than living in close quarters with others at Greene County jail, which at least has screening practices and other reasonable COVID-19 precautions in place" and "[h]e also does not address the risk of exposure to federal employees charged to monitor him if released or the health care system's capacity to provide him with adequate treatment if he were to contract the virus"); *Boatwright*, 2020 WL 1639855, at *7-8 (denying motion for temporary release on similar grounds).

Instead of demonstrating a sufficiently individualized compelling reason for release, the defendant offers a three-page string cite of cases that he selectively quotes to suggest that numerous courts have released detainees on a far less showing.  (ECF No. 262 at 14-16.)  As an initial matter, many of the cases the defendant cites address situations and

---

(noting that "most people have mild illness and are able to recover at home").

procedural postures very different from the defendant's and thus provide little guidance to how the court should evaluate the defendant's claims under Section 3142(i).  For example, several of the cases address delaying self-surrender dates for defendants who have pled guilty and been sentenced and who have already proven their ability to remain on release without incident.  *See, e.g.*, *United States v. Garlock*, Crim. No. 18-cr-418-VC-1, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25, 2020); *United States v. Matthaei*, Crim. No. 1:19-cv-243-BLW, 2020 WL 1443227, at *1 (D. Idaho Mar. 16, 2020).  Two address detention orders for individuals held for immigration reasons, not federal criminal offenses.  *In the Matter of the Extradition of Manrique*, No. 19-mj-71055-MAG-1, 2020 WL 1307109, at *1 (N.D. Cal. Mar. 19, 2020) (detainee awaiting extradition to Peru); *Xochihua-Jaimes v. Barr*, No. 18-71460 (9th Cir.) (review of Board of Immigration Appeals removal decision).  Another is a New Jersey state court order articulating the general procedure for determining when to detain or release state detainees due to COVID-19 concerns.  *In re Request to Commute or Suspend County Jail Sentences*, Docket No. 084230 (N.J. Mar. 22, 2020).  The defendant cites another case in which the defendant violated his conditions but was initially not detained due to COVID-19 concerns, *United States v. Raihan*, Crim. No. 20-cr-68-BMC (E.D.N.Y. Mar. 12, 2020), ECF No. 20, at 10:12-19, but fails to tell this Court that the court reversed course the very next day after the defendant violated his conditions again, *id.* ECF No. 21.

Moreover, the few cases the defendant cites that are on point only confirm the unavailability of release here.  The courts in those cases released defendants only because those defendants have demonstrated, confirmed health risks that uniquely heighten the

threat the novel coronavirus poses to them.  *See, e.g.*, Minutes, *United States v. Michaels*, Crim. No. 16-cr-76 (C.D. Cal.), ECF No. 1061 (finding defendant "is of an age and has medical conditions that place him in the group most susceptible to COVID-19"); Motion, *id*. ECF No. 1056 at 1-2 (noting defendant is 78 years old with COPD, emphysema, and chronic sinus disease, and with "reported documentation" of breathing difficulties and a nurse exam 11 days prior); *United States v. Copeland*, Crim. No. 2:05-cr-135-DCN (D.S.C.), ECF No. 662 (granting compassionate release for 73-year-old defendant suffering from diabetes and obesity to custody of retired registered nurse); *United States v. Perez*, 2020 WL 1329225, at *1 ("This Court's decision in this case is based on the unique confluence of serious health issues and other risk factors facing this defendant, including but not limited to the defendant's serious progressive lung disease").  Further, each court's analysis affirms the need to conduct a case-by-case examination, expressly emphasizing the individualized nature of their decisions.  *See, e.g.*, *Perez*, 2020 WL 1329225 at *1 ("[T]his Order should not be construed as a determination by this Court that pretrial detention is unsafe or otherwise inappropriate as a general matter or in any other specific case.").  And at least two required the defendants to be asymptomatic or test negative for the virus before they could be released.  Order, *Michaels*, Crim. No. 19-cr-76, ECF No. 1062, at 2-3 ("If the defendant is found to be exhibiting symptoms consistent with COVID-19 or is confirmed to have COVID-19 the defendant shall not be released to the public."); Minutes, *United States v. Avenatti*, Crim. No. 19-cr-61 (C.D. Cal.), ECF No. 128 at 2 ("Any release must be conditioned on a BOP determination that [the defendant] does not have Covid-19.").  The cases on which the defendant relies do not, therefore, support his

argument.  If anything the cases on which he relies emphasize the dearth of evidence and information that the defendant has provided this Court to support a finding that release is appropriate here.

The original reasons supporting the defendant's detention were strong and have only grown stronger.  Having no evidence that release will better protect the defendant or the community, the generalized fear the defendant has of contracting COVID-19 cannot overcome the weight of the evidence supporting his detention.  With the defendant exhibiting symptoms of COVID-19, it certainly cannot.  Having failed to satisfy his burden to demonstrate that the presence of COVID-19 in the Dallas County Jail constitutes a compelling reason for release, the Court must deny the defendant's motion on this ground.

## III. The Defendant Fails to Meet His Burden to Demonstrate that Immediate Release Is "Necessary" to Prepare for His Defense.

As an alternative basis, the defendant argues that, if he is not released immediately, it will be "impossible" for him to participate in the preparation of his defense.  (ECF No. 262 at 18-19.)  According to the defendant, his counsel is no longer willing to visit him in person out of fear he may be exposed to COVID-19 at the jail or, if counsel were to contract the virus, expose the defendant and others.  (*Id*.)  The defendant falls far short of his burden to show he is entitled to release on this basis.

Courts considering whether release is "necessary" for the preparation of a defense have considered the time and opportunity the defendant has been afforded to prepare and participate in preparation, the complexity of the case, the volume of information, and the expense and inconvenience of preparing.  *See, e.g.*, *Dupree*, 833 F. Supp. 2d at 248-50;

*United States v. Buswell*, Crim. No. 11-cr-198, 2013 WL 210899, at *6-7 (W.D. La. Jan. 18, 2013).  The mere fact that release may make preparation more convenient, however, does not render release "necessary" as required by the statute.  *See Dupree*, 833 F. Supp. 2d at 248; *United States v. Bararia*, Crim. No. 2:12-cr-236-MMD-GWF, 2013 WL 1907782, at *5 (D. Nev. Mar. 12, 2013) ("Discovery may be made marginally more difficult by the fact that [the defendant] is incarcerated.  The same can be said in every case where the defendant is detained pending trial.  Ultimately, . . . other than some inconvenience, there is no valid reason to release . . . pursuant to Section 3142(i).").

Beyond his claim that his attorney will not come to the jail to meet in person, the defendant offers no other reason why release is necessary for him to participate in preparing his defense.  Given the current guidance on social distancing, however, the defendant has no greater opportunity to meet with his attorney in person if released.  *See, e.g.*, *McDonald*, 2020 WL 1659973, at *6 ("The Court understands that there are reasons that Defendant's counsel may not wish to conduct in person visits at [the detention facility], but those same reasons would apply to in person visits if he was released.").  In addition, the defendant offers no reason why, after he has had eleven months to meet with his attorney in person and his trial is still eight months away, he now has a particularly urgent need to meet with his attorney in person—especially given his claim he is currently exhibiting symptoms consistent with COVID-19.[8]

---

[8] With respect to the second case, there is no urgent need to meet with his counsel in person:  the defendant has not yet made his initial appearance and the government has already indicated that it is agreeable to a reasonable continuance of the trial date.

Moreover, other means of communication with his attorney remain available to the defendant at Dallas County Jail.   On April 6, 2020, the government confirmed with Barnes's counsel in his other case, 3:19-cr-521-K, that video conferencing is available at Dallas County Jail.   Moreover, the jail still allows detainees to make telephone calls. Having offered no reason that release is "necessary" to prepare for his trial, the defendant cannot be deemed to have met his burden under Section 3142(i).   *See Cox*, 2020 WL 1491180 at *6 (rejecting that release was necessary for the defendant to participate in the preparation of his defense due to COVID-19, where the virus raises concerns about meeting whether inside the jail or outside, three to four video conference lines and telephone calls were available to the defendant and his counsel at the jail, and it was likely the defendant would have less access to means of communication upon release).

The facts in this case are therefore very different than in *United States v. Stephens*, 15-cr-95-AJN, 2020 WL 1295155 (S.D.N.Y., Mar. 19, 2020), on which the defendant relies, (ECF No. 262 at 19).   In *Stephens*, the defendant was arrested while on supervised release on February 6, 2020, for new offenses, and brought into federal custody in early March 2020 on a warrant for violating his supervised release.   *Stephens*, Crim. No. 15-cr-95-AJN, ECF No. 2770, at 1.   On March 16, 2020, while being held in anticipation of a violation of supervised release hearing scheduled for March 25, 2020, the defendant petitioned for temporary release, arguing, in part, that release was necessary due to the risks of COVID-19.   The court found a compelling reason for temporary release because of the specific obstacles the outbreak created for the defendant's preparation in the short period before his supervised release hearing.   2020 WL 1295155 at *3.   Specifically, the court

22

found that defense counsel not only was barred from visiting the defendant because of restrictions put in place to combat COVID-19, but had been unable to reach him by phone. *Id.*  The defendant cannot credibly claim he is similarly situated to someone preparing for a hearing of whose topic he was notified just six weeks before, in the middle of the pandemic.

## IV.   The Defendant Does Not Offer Any Suitable Individual to Whom He Can Be Released

The defendant fails to identify a single "appropriate person" to whose custody he can be released, as required by Section 3142(i).  *See, e.g.*, *United States v. Lee*, Crim. No. 19-cr-298, 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020) ("[T]o be successful, any subsequent motion for release . . . under this provision must address how [the defendant's] mother, or any other individual, would be an "appropriate person" within the meaning of section 3142(i).") (citing cases).  His failure to do so precludes the Court from undertaking the requisite analysis, as discussed above, and is fatal to his request.

In any event, the defendant's last residence before he was detained was with Beth DeGroot, his co-defendant in Crim. No. 3:19-cr-521-K, in the house he and DeGroot bought with a loan they are now charged with fraudulently obtaining.  DeGroot also faces charges that she produced falsified records and evidence to the grand jury investigating her and the defendant.  Superseding Indictment, Crim. No. 3:19-cr-521-K, ECF No. 28, ¶¶ 59-65, 71-74.  Her willingness to provide false information to the court makes her a particularly unreliable custodian.  In addition, this Court has prohibited the defendant and DeGroot from communicating, directly or indirectly.  DeGroot is therefore not an

"appropriate person" with whom the defendant can reside and the defendant has failed to identify anyone else for the Court's consideration.

## CONCLUSION

For these reasons, the government respectfully asks the Court to deny the defendant's motion.

Respectfully submitted,

ROBERT ZINK
CHIEF, FRAUD SECTION
Criminal Division, U.S. Department of Justice

//s// *Amanda R. Vaughn*
CHRISTOPHER FENTON
Trial Attorney
Christopher.Fenton@usdoj.gov
AMANDA R. VAUGHN
Trial Attorney
Amanda.Vaughn@usdoj.gov
Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 514-0561
Fax: (202) 514-0152

ERIN NEALY COX
UNITED STATES ATTORNEY

Mary Walters
Assistant United States Attorney
Texas State Bar No. 24003138
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8600
Facsimile:  214-659-8812
Email:  mary.walters@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 8, 2020, I filed this response with the clerk of court for the

U.S. District Court, Northern District of Texas via ECF.


<u>//s// *Amanda R. Vaughn*</u>
Amanda R. Vaughn
Trial Attorney